(SEAL)

Gene CASTILLO, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 74–1972

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1974.

---

* Rule 18, 5th Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir., 1970, 431 F.2d 409, Part I.

Joseph S. Horrigan, Houston, Tex. (Court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., Ben M. Harrison, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

WISDOM, Circuit Judge:

■ The question this habeas case presents is whether an attorney can adequately represent a defendant in a criminal case while representing, in unrelated litigation, a principal witness for the prosecution, who was the victim of the offense for which the defendant was charged. We hold as a matter of law that this conflict of interest deprived the defendant of effective representation by counsel essential to a fair trial.

Gene Castillo, petitioner in this case, was tried before a jury in the District Court of Reeves County, Texas, and convicted for the felony theft of four brass bowls worth about $600. On May 15, 1970, he was given an enhanced sentence of life imprisonment, under the Vernon's Ann.Texas Penal Code, Art. 63, because of two earlier convictions for burglary. The Texas Court of Criminal Appeals affirmed the conviction on direct appeal. Castillo v. State, Tex.Cr.App.1971, 469 S.W.2d 572. Castillo applied for a writ of habeas corpus in the state district court. After an evidentiary hearing, the court denied the writ. The Texas Court of Criminal Appeals affirmed denial of the application, without written order, on the findings of fact and conclusions of law of the trial court. Cas-

tillo then sought a writ of habeas corpus in the federal district court. Without an evidentiary hearing, but on the basis of the trial record and the record of the hearing in the state habeas proceeding, the district court denied the writ. We reverse and remand.

At trial, two principal witnesses testified for the prosecution, linking the defendant with the theft. One was Raymond Cowan, a junk dealer. He identified Castillo as the man from whom he had purchased the bowls in question. The other principal witness was John Bardin, the president and owner of the Baker Pump Corporation. He testified that the bowls had belonged to his company and had been taken from the company premises a day or two before they were first missed. He further testified that the defendant was a former employee and that a day or two before the bowls were first missed, the defendant had been on the company premises seeking temporary employment to earn funds for a trip to California. In short, Bardin's testimony indicated the time of the theft, tended to place Castillo on the premises at about the time of the theft, and suggested a possible motive for the theft.

Some two months before the trial, the trial judge appointed an attorney to represent Castillo. The attorney represented the defendant during all trial and court proceedings through the time of the defendant's conviction. During his representation of Castillo, this same attorney was also representing John Bardin in unrelated civil litigation. Because the trial judge was also presiding over that civil proceeding, he was "thoroughly familiar" with the appointed attorney's contemporaneous representation of Bardin, according to that attorney's testimony in the state habeas hearing. This undisputed fact suggests that the trial judge should have been more sensitive to the proprieties of legal representation; it does not, however, relieve counsel of his obligation to observe those proprieties. Certainly it does not cleanse the appointment of its inherent impropriety. Moreover, incredibly, nei-

ther the trial judge nor appointed counsel ever informed Castillo of the conflict of interest. There is no evidence that he was aware of the fact until the prosecutor brought it out in the course of examining Bardin at trial.

■ The right to counsel guaranteed by the Sixth and Fourteenth Amendments is a right to effective counsel. Herring v. Estelle, 5 Cir. 1974, 491 F.2d 125; McKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592. Effectiveness, however, is not a matter of professional competence alone. As this Court said in Porter v. United States, 5 Cir. 1962, 298 F.2d 461, 463:

> "The Constitution assures a defendant effective representation by counsel * * * Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others."

In short, "[w]e consider undivided loyalty of appointed counsel to client as essential to due process". McKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592, 599.

Here the defense attorney, without the k..owledge or assent of the defendant was actively representing the defendant's alleged victim in civil litigation. The victim of a crime is not a detached observer of the trial of the accused, and his "private attorney" is likely to be restrained in the handling of that client/witness. In a similar case, the court observed: "It takes no great understanding of human nature to realize that the individuals who have been burglarized might be less than happy and might go so far as to remove the attorney from their good graces if this defendant were acquitted or received a light sentence or were placed on probation." United States v. Myers, E.D.Pa. 1966, 253 F.Supp. 55, 57. Here Bardin was not only the victim but also a principal witness for the prosecution. In these circumstances, counsel is placed in the equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness. The risk of such ambivalence is something that no attorney should accept and that no court should countenance, much less create. We hold that the situation presented by the facts of this case is so inherently conducive to divided loyalties as to amount to a denial of the right to effective representation essential to a fair trial.

We do not ascribe to Castillo's appointed attorney nor to the appointing judge improper motives, but they are chargeable with an error of judgment fatal to a fair trial.

■ The appellant has alleged specific instances of prejudice resulting from the conflicting loyalties of his counsel. We need not inquire into those allegations. When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, as it is here, a denial of the right to effective representation exists, without a showing of specific prejudice. See Goodson v. Peyton, 4 Cir. 1965, 351 F.2d 905; United States v. Myers, E.D.Pa.1966, 253 F. Supp. 55. See also Glasser v. United States, 1941, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Zurita v. United States, 7 Cir. 1969, 410 F.2d 477.

We find it unnecessary to reach other issues raised by the appellant.

The judgment of the district court is therefore reversed and the cause remanded with directions to order the appellant discharged from custody unless the State of Texas elects, within a reasonable time to be set by the district court, to retry him on the indictment.

Reversed and remanded with directions.