466 So.2d 1013 (1984)
Ronnie DEERMAN
v.
STATE.
8 Div. 968.
Court of Criminal Appeals of Alabama.
March 20, 1984.
On Return to Remand October 23, 1984.
Rehearing Denied November 27, 1984.
*1014 Cecil M. Matthews, Albertville, for appellant.
Charles A. Graddick, Atty. Gen. and T.A. Harding Fendley, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Ronnie Deerman, the appellant, was indicted and convicted for receiving stolen property in the first degree. He was sentenced as an habitual offender to fifteen years' imprisonment. Three issues are presented on appeal.

I
The first two issues involve the allegations that Deerman's retained trial counsel had a conflict of interest because he represented a State witness in pending civil litigation.
Deerman retained the Honorable Clyde D. Baker to represent him at trial. During the trial, this issue did not surface until after the jury had retired to begin their deliberations and defense counsel called the matter to the attention of the trial judge:

*1015 "MR. BAKER: I have made known to the Court after the jury retired that I represent Willis Davis as my client in a civil matter unrelated to any of the proceedings here today. I have also informed my client, Ronnie Deerman, of my representation of Mr. Davis after the jury retired. He, to my knowledge, did not know that before the trial took place.
"THE COURT: All right. And of course, thewhat you're representing to the Court is that there might be as a matter of law a conflict between the two representations.
"MR. BAKER: I did not believe that to be so, but as an afterthought, I decided to disclose it to the Court and then to my client. II am not of that opinion, but as a matter of caution or whatever, I am making that known.
"THE COURT: All right. Mr. Deerman, I am not going to make any kind of ruling on it at this time because there is no ruling before the Court to make. I will ask you now, and Mr. Baker may not want you to answer this.
"Do you feel that there was any failure of effective counsel to represent you because Mr. Baker does represent Mr. Davis in a civil matter?
"MR. BAKER: May I say, Judge, that I would encourage him to express whatever concern he may have to the Court.
"THE COURT: Thank you. Do you have anything you want to say, Mr. Deerman?
"THE DEFENDANT: No, sir.
"THE COURT: Do you havedo you have a feeling that you have not been effectively represented by Mr. Baker?
"THE DEFENDANT: I feel he did his best to represent me in this matter.
"THE COURT: You have no complaint as far as the representation?
"THE DEFENDANT: No, sir.
"THE COURT: All right. Thank you, gentlemen."
Defense counsel further established that Deerman understood who Willis Davis was. After the jury returned its verdict of guilty, Deerman asked and was allowed to talk with his attorney, after which notice of appeal was given. The defense counsel stated that he did not want to represent Deerman on appeal: "I wanted to say that although I gave notice of appeal, I would not want at this time to appear as attorney of record for the appeal because of the facts that were related here. * * * He may decide differently."
The sentencing hearing was held fifteen days after the trial. At that time, Mr. Baker informed the trial judge that Deerman "wishes to dismiss me at this moment." Then the following occurred:
"THE COURT: I'm not going to allow you to withdraw or for him to dismiss you at this point. What reasons, Mr. Deerman, do you want to dismiss Mr. Baker, Mr. Deerman?
"THE DEFENDANT: To begin with, the fact that he represented one of the State's witnesses against me. I have employed him since November, and he should have told me before he did, which was in the middle of the trial. And there were facts and points that were not brought up in my trial, and I do not feel like I was defended properly in my case.
"THE COURT: Well, I think we would probably have to go through a further proceeding on that perhaps in reference to a motion for a new trial, but at this point, on sentencing, what do you feel that Mr. Baker is not representing you properly in this matter?
"THE DEFENDANT: Yes, sir, in with this State's witness
"THE COURT: I believe I asked you at the time of the trial your feeling about Mr. Baker and that situation, and I believe you said he had done everything he could.
"THE DEFENDANT: Yes, sir. I was afraid to be left in the middle of my trial. I asked him the morning of my trial if he was aware of civil cases that was pending on this witness against me, but he didn't tell me he represented him. Had he, I would have dismissed him then and there."
*1016 During the sentencing hearing, Deerman repeatedly asserted that he had the financial ability to retain counsel and that he intended to get his own attorney for a probation revocation hearing that was pending. The trial judge denied Deerman's request to dismiss counsel:
"THE COURT: Okay. Fine. The Court determines at this pointI'm sure the matter will be raised on other motions but at this point, the Court determines that the defense counsel is well-trained, well-organized, and most competent, and this Court heard this case and determined thenot only the evidence that was presented but the statement that was made by the Defendant. The Court not only read that but listened to the tape recording of the same. The Court at this point judicially determines that the defense counsel most competently handled the case that in the Court's mind or opinion clearly showed the guilt of the Defendant. This Court has no question that the counsel for the Defendant did everything that he could possibly do in the face of the statement made by the Defendant himself to defend the Defendant.
"Therefore, the Court denies the Defendant's motion to dismiss his attorney, denies the attorney's motion to withdraw, and determines that the case will be proceeded with."
The trial judge sentenced Deerman and, once again, Deerman asserted that he intended to and would be able to get another attorney.
Almost three weeks after being sentenced, Deerman appeared in court, claimed indigency, and the trial judge appointed the Honorable Phillip Green for "appeal or other post judgment matters." Three weeks later, the trial judge appointed the Honorable Cecil M. Matthews to represent Deerman, after Green "failed to contact the defendant or proceed with such (post judgment) matters, and upon the filing of pro se demands for relief."
Willis Davis was a witness for the State. He testified that Deerman attempted to sell him the stolen paint sprayer and that he inspected the property. After he learned from the owner that the sprayer was stolen, he went to the Albertville Police and showed them the stolen property. He received a $500 reward from the owner.
On direct examination, Davis testified that, during a recess in the trial and before he testified, Deerman said "he would get me for it." The nature of the "unrelated civil matter" in which Baker represented Davis is not revealed in the record.
The guarantee of the Sixth Amendment to the assistance of counsel for one's defense includes the right to the assistance of an attorney unhindered by a conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 355, 100 S.Ct. 1708, 1721, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. 475, 483, n. 5, 98 S.Ct. 1173, 1178, n. 5, 55 L.Ed.2d 426 (1978). "Actionable conflict of interests" have been found to exist with respect to the representation by the same defense counsel of a non co-defendant prosecution witness at a separate proceeding. Annot. 18 A.L.R. 4th 360, Section 12(a) (1982), citing Pinkerton v. State, 395 So.2d 1080 (Ala.Cr.App.1980), cert. denied, 395 So.2d 1090 (Ala.1981). In Pinkerton, a drug sale prosecution, a conflict was found where defense counsel had previously represented the informant who was the prime figure in the arrest of the defendant. The informant had been convicted of selling narcotics, and had agreed to cooperate with law enforcement officers in exchange for a recommendation of a mitigated sentence and had not yet been sentenced. This Court found it "clear ... that appellant's trial attorney could not very well seek to fully represent the appellant, when that representation would of necessity involve an attack upon the credibility of the chief witness, Vickers, especially where the attorney had had a role in negotiating the agreement by which Vickers would inform in exchange for a possibly mitigated sentence." Pinkerton, 395 So.2d at 1089.
In this case, we are faced with several considerations, no one or combination of which steers us to any clear conclusion as *1017 to the existence or nonexistence of an actual conflict. We note that it was defense counsel himself who called the matter to the attention of the trial judge. Counsel felt there was no conflict. "Courts generally give substantial weight to defense counsel's representations regarding conflicts of interest." United States v. Agosto, 675 F.2d 965, 972 (8th Cir.1982); United States v. Burroughs, 650 F.2d 595, 598 (5th Cir.1981).
Also, we note that Deerman expressed his satisfaction with his retained counsel before the verdict was returned and raised his objection only at the sentencing hearing. We have some difficulty in finding any waiver in this case under the test set forth in Zuck v. Alabama, 588 F.2d 436, 440 (5th Cir.1979):
"While it is true that a defendant can waive his right to effective assistance of counsel, a waiver is valid only if it is knowingly and intelligently made. United States v. Alvarez, [580 F.2d 1251] at 1259-60 [(1978)]; Gray v. Estelle, 574 F.2d 209, 213 (5th Cir.1978); United States v. Garcia, 517 F.2d 272, 276 (5th Cir.1975). In order for a waiver of the right to conflict-free counsel to be knowing and intelligent, the State must show that the defendant (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel. Garcia, supra, 517 F.2d at 278."
Here, the State has not shown that Deerman was informed of these three factors at trial when he was first informed of the conflict. At the sentencing hearing it is clear that Deerman did not waive anything.
We further note the differences in Davis' testimony and Deerman's confession regarding Davis' involvement in and actions surrounding Deerman's attempted sale of the stolen property. Davis was not cross examined about these differences. Here, as in the successive representation situation, "counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." Agosto, 675 F.2d at 971. Another major possibility of conflict in this situation is "that the attorney's pecuniary interest in possible future business may cause him to make trial decisions with a view toward avoiding prejudice to the client...." Agosto, 675 F.2d at 971.
Finally, we note that the trial judge specifically anticipated a hearing on this issue. In denying Deerman's request to dismiss counsel at the sentencing hearing, the judge stated, "Well, I think we would probably have to go through a further proceeding on that perhaps in reference to a motion for a new trial." Such a motion was never filed because appointed counsel Green "failed to contact the defendant or proceed with such matters." Deerman's present appellate counsel, Cecil Matthews, was appointed only well after the expiration of the thirty-day period for the filing of a motion for new trial. A.R.Crim.P. Temp. 13(a)(2).
Under the facts of this case and because of the considerations reiterated above, our attitude toward this case is the one of caution expressed in Zuck, 588 F.2d at 440:
"(T)he sixth amendment requires that a defendant may not be represented by counsel who might be tempted to dampen the ardor of his defense in order to placate his other client. The fact that a particular lawyer may actually resist that temptation is of no moment. The right to effective assistance of counsel is so vital to a fair trial that courts are compelled to examine every potential infringement of that right with the most exacting scrutiny. Determining whether a particular attorney has yielded to the temptation a conflict presents requires a searching analysis of his performance at trial. A cold, dispassionate appellate transcript simply cannot provide an adequate basis for assessing such a performance, for subtle variations in demeanor and depth of cross-examination cannot be reflected in the pages of a transcript. For this reason, the mere existence of a temptation in the abstract *1018 is sufficient to preclude duality of representation."
Nothing in this opinion is intended to indicate or imply our judgment on the fundamental issue of this appealwhether or not defense counsel had a conflict of interests in representing defendant Deerman and State's witness Davis. Serious allegations have been made concerning the effectiveness of trial counsel. Such claims abound before this Court. Petitions for collateral post-conviction relief threaten to choke both state and federal appellate courts and render the term "finality of judgment" meaningless. One of the most common claims in these post-conviction petitions is the ineffectiveness of defense counsel. Were we to review this issue solely on the facts contained in the record, we would undoubtedly face the same issue at some future time in a petition for writ of error coram nobis or related remedy. In an effort to prevent this and for the other considerations advanced herein, we remand this cause to the circuit court for an evidentiary hearing on whether Deerman was denied the effective assistance of counsel in view of the alleged conflict of interests stemming from trial counsel's concurrently representing the prosecution's chief witness in another matter. See Commonwealth v. Hill, 273 Pa.Super. 472, 417 A.2d 745 (1979). After the evidentiary hearing, the judge is to make written findings of fact. A record of the hearing and the judge's findings of fact shall be sent to this Court.

II
Deerman also contends that it was error to admit a typewritten transcript of a tape-recorded statement he gave the police because the transcript was not accurate and because the actual tape recording was the best evidence. "Where a tape recording of accused's confession has been made, the best evidence does not require that the recording be produced in court." 23 C.J.S. Criminal Law, Section 833(e) (1961). Quoted with approval in Hawkins v. State, 443 So.2d 1312 (Ala.Cr.App.1983). See also Kennedy v. State (Ms. 7 Div. 966, January 31, 1984) (Ala.Cr.App.1984); Beech v. State, 439 So.2d 1331 (Ala.Cr.App.1983).
Here, the trial judge compared the written transcript with the tape recording and found that it was accurate, "despite some minor errors in spelling ... as far as the content or context of the statement, the Court finds from the hearing that the transcript and the tape are basically the same." Additionally, we note that the tape recording was made available to defense counsel "if he want(ed) to introduce it."
For the reasons set forth in this opinion, this cause is remanded with directions to the circuit court.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
An evidentiary hearing was held in this cause in accordance with our instructions. Deerman and his retained trial defense counsel testified at this hearing. After hearing the testimony and argument of counsel, the trial judge made the following findings:
"JUDGMENT"
"In accordance with the direction of the Alabama Court of Criminal Appeals, this case was set for evidentiary hearing on the 4th day of April, 1984, continued from time to time, submitted on June 22, 1984, and taken under advisement.
"The court has carefully considered the testimony herein, the law which appears applicable thereto and finds as follows:
"That the Appellant, Ronnie Deerman, first consulted Honorable Clyde Baker on the 10th day of January, 1983, and retained said attorney subsequent to that date; that Willis Davis was a State's witness against Deerman; that Davis retained Baker's law firm on October 20, 1982, to represent him in a civil matter *1019 concerning an injury which Davis received from a dog bite; that this matter was settled on June 1, 1983, prior to the criminal trial which began on June 20, 1983; that Davis retained the Baker firm on a second civil matter on May 31, 1983; that this matter concerned a suit against Davis for rent, being settled in the late summer of 1983; that neither of the civil cases in which Davis was involved was related to the criminal prosecution against Deerman; that no information concerning Deerman came to Baker from Davis; it is noted by the court that the criminal offense for which Deerman was tried occurred in the early part of 1982, and that Deerman made a statement in November, 1982; that Baker realized that he was simultaneously representing Davis on the date of Deerman's trial but did not advise Deerman of the dual representation until the jury began its deliberation.
"The court in CASTILLO V. ESTELLE, 504 F.2d 1245 [1243] (1974), holds that the attorney representing the defendant charged with a criminal offense and at the same time representing a State's witness, the victim of that crime, in an unrelated civil matter, has a conflict of interest, as a matter of law, which deprives the defendant effective representation of counsel.
"The court in ZUCK V. STATE OF ALABAMA, 588 F.2d 436 (1979), follows the CASTILLO ruling, albeit in a less aggressive manner, stating that the possibility of temptation to be less zealous is sufficient to constitute an actual conflict of interest as a matter of law. That court goes on to say that such a conflict may be waived by the criminal defendant if done knowingly and intelligently.
"The present trial court, upon becoming aware of the conflict, did not sufficiently inquire into a constitutional waiver by the defendant, following the criteria of ZUCK and GARCIA, and must accept the blame for this delay and additional labor for all involved; however, the sole alternative, if not waived, would have been to declare a mistrial in the case.
"The court in U.S. V. ALVAREZ, 580 F.2d 1251 (1978) stated that:
"... an actual conflict of interest must always be demonstrated before an accused can establish a denial of effective assistance of counsel; hypothetical or speculative conflicts will not suffice
...
"In the event our appellate court determines, as a matter of law, that the simultaneous representation of a criminal defendant and a prosecution witness, in the same or some other matter, is an actual conflict of interest which would impair the attorney's abilities to adequately represent the criminal defendant then a new trial should be afforded Deerman. If, however, the reviewing court reasons that the determination of such a conflict, created by the dual-representation, is a question of fact, then the following would be applicable:
"This court observed the trial tactics of Deerman's attorney, the manner in which the trial was conducted, the cross-examination of Willis Davis, the testimony of Deerman and all aspects of the trial and finds that there was no lessening of the advocate's zeal; that there has been no showing of an actual conflict of interest outside the fact of the dual-representation. Baker felt there was no conflict of interest and only out of caution, although unfortunately belatedly, advised Deerman and the court; the court is also of the opinion that there was no conflict of interest which deprived Deerman of effective representation of counsel essential to a fair trial, and so finds.
 "/s/ William D. Jetton
 CIRCUIT JUDGE"
The general rule is that it is improper for an attorney to represent a defendant where counsel has, in a prior matter, represented a prosecution witness. Annot. 27 A.L.R.3d 1431, § 2 (1969). The United States Federal Court of Appeals for the Fifth Circuit has held that an attorney cannot adequately "represent a defendant in a criminal case while representing, in unrelated litigation, a principal witness for *1020 the prosecution, who was the victim of the offense for which the defendant was charged." Castillo v. Estelle, 504 F.2d 1243, 1244 (5th Cir.1974). Such a conflict of interest deprives the defendant of the effective representation by counsel essential to a fair trial "as a matter of law." Castillo, 504 F.2d at 1244. The federal courts of the Fifth Circuit have held that where there exists a "real" conflict of interest, "a denial of the right to effective representation exists, without a showing of specific prejudice." Castillo, 504 F.2d at 1245.
The situation in which defense counsel represents both the defendant and a prosecuting witness is improper and "inherently conducive to divided loyalties as to amount to a denial of the right to effective representation essential to a fair trial." Castillo, 504 F.2d at 1245. While prejudice will be presumed in such a situation, we do not consider that the presumption is conclusive and irrebuttable. Yet, because of the fundamentally antagonistic positions between a defendant and a prosecuting witness, the presumption of prejudice that attaches to defense counsel's simultaneous representation of these individuals will be difficult to overcome.
We do not believe that Castillo establishes an ironclad rule requiring reversal in every case where defense counsel also represents a prosecution witness. Here, the trial judge found, as a matter of fact, that there was no conflict of interest and that Deerman was not deprived of the effective assistance of counsel. Under Castillo, defense counsel's representation of Deerman and a prosecution witness did constitute a conflict of interest. However, we find that the conflict did not prejudice Deerman.
The conflict could only affect defense counsel's cross examination of Davis. Barham v. United States, 724 F.2d 1529, 1535 (11th Cir.1984) (J. Wisdom concurring). Even if Davis had been impeached, the evidence against Deerman was overwhelming. The trial judge found that "the counsel for the Defendant did everything that he could possibly do in the face of the statement made by the Defendant himself to defend the Defendant."
Here, the conflict was so slight that the trial judge found that there was no conflict of interest. The trial judge was in the best position to review this issue and this Court should not reverse his finding of fact where there is no clear evidence to the contrary.
The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.