The appellant, Virgil Lee Brownlee, was convicted of capital murder and was sentenced to death. This conviction and sentence were affirmed on direct appeal. Brownlee v. State,545 So.2d 151 (Ala.Crim.App. 1988), aff'd, 545 So.2d 166 (Ala. 1989), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161
(1989), reh. denied, 493 U.S. 986, 110 S.Ct. 527,107 L.Ed.2d 527 (1989). The appellant filed a petition under the Rule 20, Ala.R.Crim.P.Temp.[1] The circuit judge who presided over the appellant's trial also presided *Page 93 
over the evidentiary hearings on this petition, which were held on December 18, 1990, April 9, 1991, and August 20, 1991. On April 2, 1992, the trial judge denied the appellant's petition in a written order. This appeal followed.
The appellant, in his brief on appeal, claims that this Court must search this record for plain error, pursuant to Rule 45A, Ala.R.App.P. However, " 'the plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence.' Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992)."Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
In addition, "[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v. Tarver, 629 So.2d 14, 19
(Ala.Crim.App. 1993).
The appellant tries to preserve issues not presented in his brief on appeal by referring to these issues, contained in his petition, in footnote 3 of the brief. " '[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned.' United States v. Burroughs, 650 F.2d 595, 598
(5th Cir.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580,70 L.Ed.2d 483 (1981)." Burks v. State, 600 So.2d 374, 380
(Ala.Crim.App. 1991). We will not review issues not listed and argued in brief. Burks.
 I
The appellant claims that the trial court erred in not granting this petition and ordering a new trial because, he says, the testimony at trial of the state's chief witness, Willie Goodgame, was allegedly perjured. This claim is based on Goodgame's recantation of his trial testimony. The appellant relies on Ex parte Frazier, 562 So.2d 560 (Ala. 1989) to support his argument that his conviction and sentence should be reversed and a new trial granted.
A brief overview of the facts of this case is helpful. On May 19, 1986, three individuals entered Jodie's Lounge in Birmingham and robbed the bar and its patrons and shot and killed the owner, Lathen Aaron Dodd. Willie Goodgame and Robert Harris were positively identified by eyewitnesses as participants, but none of the victims could identify the appellant either as a robber or as the triggerman. Goodgame was allowed to plead guilty to felony murder and he was sentenced to four consecutive life sentences, in exchange for his testimony against Robert Harris and the appellant. Goodgame's testimony against the appellant was summarized as follows inBrownlee v. State, 545 So.2d 151, 154-55 (Ala.Crim.App. 1988):
 "Goodgame testified that the defendant formulated the robbery. According to him, Brownlee stated a few hours before the robbery, 'I know where there is a lick,' meaning where they could get some money. The defendant, Goodgame, and Harris discussed how to pull the robbery, and they armed themselves with a .357 Magnum, a .38 pistol with a sawed-off barrel, and a regular .38 pistol, respectively. Goodgame stated that they drove to Jodie's Lounge in 'Sonny' Warren's car and that Warren stayed in the car while the others went in and robbed the bar. The statement that Warren was involved was disputed by Warren.
 "According to Goodgame, when he, Harris and Brownlee arrived at the bar, Goodgame was posted at the entrance and stayed there throughout the robbery. He maintained that he never fired any shots. Goodgame further testified that he did not see whether it was Harris or Brownlee that shot Dodd, but that subsequent to the robbery, when the spoils were being divided between them, Brownlee stated to Harris: 'He had gone for his pistol. . . . I had to kill the M_____ F_____ because he went for his pistol.' Moreover, Goodgame said that the next day [the] defendant stated: 'If I wouldn't have shot him, he would have shot me.'
 "Part of Goodgame's testimony was corroborated by that of 'Sonny' Warren and Reavor Jones. Warren and Jones testified that the defendant, Harris, and Goodgame locked themselves up in the bedroom of Reavor Jones's apartment for an unspecified period of time. When they came out they were all armed with guns. Defendant asked Warren if he could borrow his car. *Page 94 
Warren was initially unwilling to let Brownlee borrow his car, but eventually agreed. However, Warren stated that he had no knowledge of the planned robbery. Warren and Jones said that Brownlee, Harris, and Goodgame then left Reavor Jones's apartment and were gone for approximately two hours. Warren and Ms. Jones, according to their own testimony, remained at Ms. Jones' apartment. When they returned they again went back to the bedroom and closed the door behind them. Some time later, Warren entered the bedroom and saw a number of wallets and jewelry spread out on the bed. Later, the defendant, Goodgame, and Harris emerged from the bedroom to 'shoot' or 'snort' some cocaine, smoke some marijuana, and take some 'T's' and 'Blues.' At some point, Harris almost overdosed and the group talked about taking him to a hospital.
 "The next day Goodgame and the defendant attempted to sell their weapons and the gun stolen from one of the patrons of Jodie's Lounge to Booker T. Harris. However, Harris was willing to buy only two of the weapons, leaving Goodgame and the defendant with the .357 Magnum. The defendant and Goodgame also disposed of the emptied wallets and identification papers taken in the robbery by going behind Ms. Jones' apartment and throwing them into Village Creek. Investigators from the Birmingham Police Department later recovered some of these identification papers from the banks of Village Creek directly behind Ms. Jones' apartment. The investigators also recovered the weapons sold to Booker T. Harris by the robbers. This concluded the State's case. The defendant offered no testimony."
Brownlee v. State, 545 So.2d at 154-55.
The standard applied in death penalty cases where a defendant seeks a new trial on the ground of perjured testimony is set out in Ex parte Frazier, 562 So.2d 560, 570 (Ala. 1989):
 "In order to grant a motion for a new trial alleging perjured testimony, the trial court must be reasonably well satisfied 1) that testimony given by a witness at trial was false; 2) that there is a significant chance that had the jury heard the truth, it would have reached a different result; and 3) that the movant is not relying on evidence of which he was aware at trial and which he consciously decided not to use to challenge the testimony of the perjured witness."
See also Hays v. State, 599 So.2d 1230 (Ala.Crim.App. 1992);McMillian v. State, 616 So.2d 933 (Ala.Crim.App. 1993).
 "With regard to the standard, 'a presumption of correctness will continue to be indulged in favor of the trial court's factual findings, and the trial court's ruling on the motion will be upheld on appeal unless it is clearly erroneous.' "
616 So.2d at 941.
The nature of Willie Goodgame's recantation is best illustrated by the following testimony from a deposition taken on May 28, 1991:
 "Q [State]: In any event, you said that you were coerced to testify falsely by the implication of threat. If you would, tell me what these implied threats were.
 "A [Goodgame]: Well, I just felt like that since I have learned more concerning the law, since I have been in prison, and I just felt like it could have been, you know, what's really happening. You know — they interrogated me, just do it right instead of saying what Brownlee, you know, had said, what Brownlee going to do and different things like that. So, those are the kinds of threats that I said I feel.
 "Q: And this was made by Mr. Russell [district attorney]? Did Mr. Russell tell you this?
 "A: Well, you know, Mr. Russell and my attorney, they just was telling me, you know, what Brownlee going to do, you know, and was telling me about he don't have no — you know, he through with life, he, you know, different things like that. Getting out of prison and so on and so on, things like that.
 "Q: Which one told you this, Mr. Russell or your attorney —
"A: Both.
 "Q: — or do you recall? And where did this take place? *Page 95 
 "A: Well, I talked to Mr. Russell in one of these courtrooms several times.
"Q: In a room like this?
"A: Yeah.
 "Q: Did he ever tell you that he wanted you to tell anything other than the truth?
 "A: He just — you know, once me and my lawyer had discussed it when I get on the stand, what to do, and how to do it. Mr. Russell, you know, he just telling me, he said, 'You know, get up there and tell them exactly how your lawyer, you know, telling you to do,' and different things like that there.
 "Q: What different things like that there? What different things did he tell you to do?
 "A: He told me to get up there and don't be scared and just go ahead and, you know, tell your part and get on down, you know, go on back and start building your time, different things like that, you know. You know, he will protect me in prison system, he will make sure that Brownlee never would, you know, get a chance to get to me, things like that.
"Q: He told you to tell the truth, didn't he?
"A: (No response from the witness.)
"Q: Didn't he tell you to tell the truth?
"A: I would rather not answer that.
 "Q: You would rather not answer that. Can you tell me why you would rather not answer that?
"A: No."
After being threatened with contempt of court, Goodgame stated that Harris and the appellant were not with him at Jodie's Lounge, but that the other robbers were individuals from out of town. He knew one as Ron, but did not know the other. According to Goodgame's testimony, he had just met these individuals when they robbed Jodie's Lounge, driven there by another individual he did not know. At the August 20, 1991, hearing on the appellant's Rule 32 petition, Goodgame testified that he never told his attorney about the involvement of any out-of-towners in the robbery/murder at Jodie's Lounge.
Further evidence of Goodgame's perjured trial testimony came from two other prisoners, Marty Lee George and James Threatt. George testified that Goodgame told him that the appellant was not involved in the robbery/murder. On cross-examination, George testified that Goodgame did not tell him anything about the robbery/murder except that the appellant was not involved. James Threatt also testified that Goodgame told him that the appellant was not at Jodie's Lounge and that Goodgame felt a lot of pressure to testify against the appellant.
There was also evidence that weighed against the truth of Goodgame's recantation. The appellant admitted to his attorney and the district attorney that he was at Jodie's Lounge at the time of the robbery/murder, but he denied shooting anyone. Goodgame never told his attorney the story of the involvement of the out-of-town individuals. In fact, he never told anyone this story until this evidentiary hearing. The fact that Goodgame's trial testimony was strong enough to convince a jury that the appellant was guilty and that he deserved the death penalty, despite the efforts of the appellant's counsel, is compelling.
The trial judge had the opportunity to determine the credibility of the witnesses, both at the evidentiary hearings and at trial. He found that Goodgame's trial testimony was not perjured. The evidence regarding the truth or falsity of Goodgame's trial testimony was conflicting, so it is considered here in light of the presumption of correctness accorded a trial judge's finding.
 " 'The credibility of witnesses is for the trier of fact, whose finding is conclusive on appeal.' Collins v. State, 412 So.2d 845, 846
(Ala.Cr.App. 1982). We cannot pass judgment on the truthfulness or falsity of testimony or on the credibility of witnesses. Id. Under the circumstances here, this was the trial court's determination. After reviewing all of the evidence, we cannot say that the trial court's ruling is clearly erroneous."
McMillian v. State, 616 So.2d at 941. The trial judge did not err.
 II
The appellant argues that one of his defense attorneys had a conflict of interest *Page 96 
because that attorney was shown as the prosecutor on the case action summaries used to prove the appellant's felony convictions in 1979 and 1980. He argues that that conflict rendered the appellant's counsel ineffective.
During the appellant's trial, defense counsel Burton Dunn noticed that he was named as the prosecutor in the cases resulting in the appellant's prior felony convictions. This fact was brought to the attention of the trial court, and a conference was held between the judge, the state, and the defense. As a result of this conference, the appellant's counsel stipulated to the prior convictions rather than have them presented to the jury. The thrust of the appellant's claim is that because Burton Dunn was named as the prosecutor on the case action summaries, he did not challenge the validity of these convictions. On the other hand, if Dunn was not the prosecutor and his name was on the case action summaries as an error, he should have challenged the proof of these convictions because this error made these documents defective.
 "For counsel to be so ineffective in a conflict of interest context that an accused has been denied his Sixth Amendment right to counsel, counsel must be hampered by an 'actual conflict of interest.' Ex parte Parker, 704 S.W.2d 40, 41
(Tex.Ct.App. 1986); Baty v. Balkcom, 661 F.2d 391 (5th Cir. 1981), cert. denied, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982)."
Browning v. State, 607 So.2d 339, 342 (Ala.Crim.App. 1992).
 "An actual conflict is a real conflict. McConico v. Alabama, 919 F.2d 1543, 1546 (11th Cir. 1990). 'A possible, speculative or merely hypothetical conflict does not suffice.' Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988). 'An actual conflict of interest occurs when a defense attorney places himself in a situation "inherently conducive to divided loyalties." Castillo [v. Estelle, 504 F.2d 1243 (5th Cir. 1974)] at 1245.' Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985). See also Smith v. White, 815 F.2d 1401
(11th Cir. 1987), cert. denied, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987)."
607 So.2d at 342.
 "To prove that an actual conflict adversely affected his counsel's performance, a defendant must make a factual showing 'that his counsel actively represented conflicting interests,' Cuyler v. Sullivan, 446 U.S. [335] at 350, 100 S.Ct. [1708] at 1719 [64 L.Ed.2d 333 (1980)], " ' "and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." ' " Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.) [quoting United States v. Mers, 701 F.2d 1321, 1328 (11th Cir. 1983)], cert. denied, 467 U.S. 1230 [104 S.Ct. 2687, 81 L.Ed.2d 882] (1984)."
Molton v. State, 651 So.2d 663 (Ala.Crim.App. 1994).
At the evidentiary hearing, the appellant introduced as evidence the case action summaries referred to previously. Burton Dunn testified that he did not believe that he had been the prosecutor in the prosecutions resulting in the appellant's previous convictions. Dunn testified that because he was a supervising district attorney at that time, cases were assigned to his division and then he delegated them to the individual assistant district attorneys for trial. Various witnesses testified that Dunn was not the prosecutor in the cases in question. Doug Valeska, an assistant district attorney at that time, swore in an affidavit that he prosecuted the appellant in 1979 and 80. In addition, the case action summary for the appellant's capital murder trial reflected the Jefferson County district attorney as the prosecutor when, in fact, that case was assigned and tried by two assistant district attorneys. Citing this evidence, the trial judge made a finding of fact that no conflict of interest existed between the appellant and his defense attorney, Burton Dunn. The trial judge was in the best position to make this determination and "this Court should not reverse his finding where there is no clear evidence to the contrary." Deerman v. State, 466 So.2d 1013, *Page 97 
1020 (Ala.Crim.App. 1984), cert. denied, 466 So.2d 1020
(Ala. 1985).
In light of the trial judge's finding of fact regarding the conflict issue, the appellant's claim that his counsel was ineffective for stipulating to these prior convictions is without merit. Dunn testified that there was no question that the state had proper proof of the appellant's prior felony convictions and that his name on those documents could very well confuse the jury or, worse, hurt his credibility with the jury as counsel for the appellant, and that publishing the case action summaries to the jury could affect its sentence recommendation. This was a strategic decision based on his experience both as a former prosecutor and as a defense attorney with experience in capital cases. Strategic decisions at trial are left to the judgment of counsel and "do not result in ineffective assistance, whether right or wrong." Maxwell v.State, 620 So.2d 93, 97 (Ala.Crim.App. 1992).
 III
The appellant contends that the state's key witness was not sworn and this denied the appellant the opportunity to confront and to cross-examine him. This issue is precluded by Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P., as an issue that could have been, but was not, raised at trial and that could have been, but was not, raised on appeal. Cf. Schut v. State,548 So.2d 638, 639-40 (Ala.Crim.App. 1989). (Failure to object, at trial, to unsworn witness waives that issue).
 IV
The appellant argues that the failure to fully transcribe the trial court proceedings deprived him of the statutorily required scope of appellate review. This issue is precluded by Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P., because it is an issue that could have been, but was not, raised at trial and could have been, but was not, raised on appeal.
 V
The appellant claims that his counsel was ineffective before trial, during the guilt phase of the trial, at the penalty phase of the trial, and at the sentencing hearing.
Where, as here, appellate counsel and trial counsel were the same, a claim of ineffective assistance of counsel is cognizable in a petition for post-conviction relief under Rule 32, Ala.R.Crim.P. Ex parte Besselaar, 600 So.2d 978 (Ala. 1992).
The United States Supreme Court, in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)[2], established a two-pronged test a defendant must meet in order to support a finding that his counsel was ineffective.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.
The appellant, in his brief on appeal, has submitted a litany of ineffective assistance claims — acts and omissions that allegedly affected the outcome of the appellant's trial and resulted in the sentence received. *Page 98 
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 131-35, 102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, 350 U.S. [91] at 101, 76 S.Ct. [158] at 164, [100 L.Ed. 83 (1955)]."
466 U.S. at 689, 104 S.Ct. at 2065. The appellant is required to "affirmatively prove prejudice" in making claims of deficient performance by his attorney. 466 U.S. at 693,104 S.Ct. at 2067. Additionally, a reviewing court may determine if there was sufficient prejudice in the appellant's claims without regard to any deficiency of counsel's performance.466 U.S. at 697, 104 S.Ct. at 2069.
 INEFFECTIVENESS OF COUNSEL — PRETRIAL
The appellant's claim that his counsel was ineffective for failing to consult with Herbert Massie, former counsel for the appellant, is without merit. Mr. Massie represented the appellant only through the preliminary hearing, at which time he was suspended from the practice of law and present counsel was appointed. James Kendrick testified that he and his co-counsel, Burton Dunn, had the transcript of the preliminary hearing, so consultation with Mr. Massie was not needed.
The appellant's claim that his counsel was ineffective for failing to interview the victims from Jodie's Lounge is without merit. The appellant's counsel availed themselves of the Jefferson County District Attorney's "open discovery" policy and had access to all victim interviews conducted by the police during its investigation. In addition, none of the victims could identify the appellant as one of the perpetrators of this crime, so there was no reason for the appellant's attorneys to conduct their own interviews.
The claim that counsel was ineffective for failing to interview the codefendants is without merit. Any information the codefendants may have given was made available to the appellant's counsel through discovery and the preliminary hearing transcript. The only statements available were from Willie Goodgame. Robert Harris invoked his Fifth Amendment rights and refused to answer questions.
The claim that counsel was ineffective for failing to investigate the appellant's prior convictions was addressed in Issue II, above, and is without merit. The convictions were properly certified and were admissible.
The claim that counsel was ineffective for failing to obtain tape recordings of witnesses' statements is without merit. These statements were made available to the appellant's counsel through discovery.
The claim that counsel was ineffective for failing to review the transcript of the appellant's preliminary hearing is without merit. The appellant's counsel reviewed the transcript and obtained the testimony of Willie Goodgame, Reavor Jones, and "Sonny" Warren.
 INEFFECTIVENESS OF COUNSEL — TRIAL/PENALTY/SENTENCING PHASES
The appellant argues that counsel failed to present mitigation evidence to the jury. The appellant's counsel based their trial strategy on attacking the sufficiency of the state's evidence and did not put on any witnesses.
The argument that the appellant's counsel was ineffective for failing to present evidence of the appellant's mental, psychological, *Page 99 
and medical history in mitigation is without merit. Dr. William Beidleman, a clinical psychologist, testified at the appellant's sentencing hearing and at the Rule 32 hearing. Although the appellant's Rule 32 counsel supplied Dr. Beidleman with a large volume of records, his testimony regarding the appellant's mental and psychological condition was basically the same as that given at the penalty phase of the appellant's trial. The trial judge found that this was not evidence in mitigation. Assuming, arguendo, that counsel's conduct in not obtaining the appellant's psychological records was deficient, the trial judge's finding would have been the same, so there was no prejudice.
In addition, Burton Dunn testified that in his opinion evidence of the appellant's voluntary drug use, while in the military and during his previous prison term, would not be considered a mitigating factor to a Jefferson County jury. The appellant fails to show any prejudice in not introducing this evidence.
The appellant claims that his counsel was ineffective for failing to introduce his Department of Corrections records. However, the appellant fails to prove that he was prejudiced, at his sentencing, by his counsel's failure to introduce these records at trial.
The appellant claims that his counsel was ineffective for failing to introduce evidence of his family background. Two of the appellant's sisters testified at his sentencing hearing. At his Rule 32 hearing, these sisters testified that the family lived in a high-crime area. They also testified that, in spite of this influence, no other siblings had any trouble with the law (subsequent to the appellant's conviction, a brother was sentenced to prison). There was no showing of prejudice made in this claim.
 INEFFECTIVENESS OF COUNSEL-APPEAL
The appellant claims that his counsel was ineffective on appeal. His appellate counsel, James Kendrick, testified that he raised on appeal what he judged to be the strongest issues. Counsel need not raise and address each and every possible issue on appeal to render effective assistance of counsel. The process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536,106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). See also, Johnson v.State, 612 So.2d 1288, 1303 (Ala.Crim.App. 1992). All other claims raised by the appellant in this section of his brief on appeal have been previously addressed in this opinion.
 VI
The appellant contends that the state failed to disclose to the jury Willie Goodgame's prior conviction for unlawful possession of a handgun. This issue is precluded under Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P., as an issue that could have been, but was not, raised at trial and that could have been, but was not, raised on appeal. Even if this issue were not procedurally barred, it is without merit. Goodgame agreed to testify against the appellant and Robert Harris in exchange for four consecutive life sentences, with the sentence in any convictions had in cases pending against him to run concurrently with this sentence. Among these pending convictions was the unlawful possession of a handgun. This conviction was not disclosed because, at the time of Goodgame's testimony, it was not a final conviction.
 VII
The appellant argues that the trial judge, in his order denying the appellant's petition, classified his conclusions of law as findings of fact and that this Court must reject these conclusions. Even when, unlike here, a trial court adopts one party's findings of fact and conclusions of law verbatim, those findings and conclusions will be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C.,470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Examining these findings of fact and conclusions of law in light of the issues presented by the appellant in his brief, we cannot say that these findings and conclusions were clearly erroneous. *Page 100 
 VIII
The appellant claims that the trial court misapplied the rules of preclusion regarding post-conviction petitions. This claim is without merit. We earlier stated that claims of ineffective assistance of counsel are cognizable in a Rule 32, Ala.R.Crim.P., petition. In its order denying the appellant's petition, the trial court stated:
 "This Court is well aware of the important goals served by procedural bar rules such as those applicable in this proceeding. See, e.g., Presnell v. Kemp, 835 F.2d 1567, 1578-1585 (11th Cir. 1988), cert. denied [488 U.S. 1050], 109 S.Ct. 882
[102 L.Ed.2d 1004] (1989). Accordingly, this Court fully intends to apply the applicable procedural bars in this case. This Court is also aware that in at least some instances it is preferable for the Court that makes the first ruling on a post conviction petition to alternatively address the merits of procedurally barred claims. Where this Court holds that both a claim is procedurally barred and that it is without merit, the Court intends for the procedural bar holding to be the primary holding and a sufficient basis for disposition of that claim, and it intends for the alternative holding concerning the merits of the claim to be secondary in nature."
(C. 735-36.) The trial court's order sufficiently addressed the merits of the ineffective assistance of counsel claims, as well as any other claims it deemed necessary to address, in the appellant's petition.
The Jefferson County Circuit Court's denial of the appellant's post-conviction petition is affirmed.
AFFIRMED.
All the Judges concur.
[1] During the pendency of this proceeding, the permanent Alabama Rules of Criminal Procedure became effective and Rule 32, Ala.R.Crim.P., replaced Rule 20. All references to this petition will be to Rule 32.
[2] We note that on page 59 of the Appellant's brief, the Washington of Strickland v. Washington is erroneously referred to as the State of Washington. However, the parties in that case were Charles E. Strickland, Superintendent, Florida State Prisons, et al., Petitioners and David Leroy Washington, Respondent.