laSHORTESS, Judge.
Jerry Smith, Garrick J. Watts, and Bernard Myles were charged jointly by grand-jury indictment with first-degree murder. La.R.S. 14:30. The indictment was subsequently amended to charge them with second-degree murder. La.R.S. 14:30.1. Each of the defendants pleaded not guilty and, after a single jury trial in which they were jointly represented by two attorneys, Marvin Gros and Michael MeClanahan, each was found guilty as charged. . The trial court sentenced each defendant to a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Represented now by separate counsel, they appeal.
Each defendant assigns as error that the trial court failed to protect his constitutional right to effective and conflict-free counsel. Smith and Myles also complain that the trial court erred in denying their motions for post-verdict judgment of acquittal. In addition, Smith contends his sentence is excessive.
FACTS
Smith, Watts, and Myles are lifelong friends. They frequently spent the night at the home of Watts’s sister and brother-in-law, Jean and Nazier “Mickey” Simmons, in Hillaryville, Ascension Parish. The three occasionally performed odd jobs for the Sim-monses at the Bottom Line Lounge, a bar Jean owned and operated with her husband in Darrow, Louisiana. On January 5, 1994, Jean telephoned Watts and requested that he and his friends, Smith and Myles, work that evening at the bar playing records. She told Watts she would leave the side door to her house open so he could go inside to change his clothes.
Myles picked up his two friends and drove his ear straight to the bar, without stopping at the Simmonses’ house for Watts to change. When they arrived, Jean told them she did not need them to work because they were too late. They left the bar shortly thereafter and, while driving home, decided to go to the Simmonses’ residence. Watts was so familiar with the Simmonses’ house that he knew where they kept their cash. The friends believed Mickey owed them for working at the bar on prior occasions, and they wanted to get the money he owed them.
*1228 |3They parked the ear near the levee, some distance from the house, and walked down the street to the house. Watts went in through the unlocked left-side door, then went around and opened the right-side door for Smith and Myles.
While they were unsuccessfully searching for money, Watts suddenly said he heard a noise, which turned out to be Mickey entering the house. Smith and Myles immediately went out a door into the backyard. Watts, however, encountered Mickey inside the house. Watts, who was armed with a .38-caliber handgun, shot Mickey twice. At trial, Watts claimed he shot Mickey in self-defense after Mickey cursed and pointed a gun at him. Mickey died as a result of internal bleeding from a wound to his left shoulder.
Upon hearing the first gunshot, Myles jumped the back fence and ran toward the car. Smith also jumped the fence but waited to see who emerged from the house. When he heard a second gunshot, he started running. Watts came out of the house and caught up with Smith and Myles. Upon reaching the levee, Watts threw his gun behind it. Myles then drove everyone home; no one discussed what had occurred. Watts testified he was crying, while Myles muttered, “[D]amn, man.” All three defendants were arrested and charged with the murder of Mickey Simmons. Another gun was found at the crime scene.
CONFLICT OF INTEREST
All three defendants argue the trial court erred in failing to either inform them of their right to conflict-free representation or to inquire into the nature of the conflict of interest presented by the fact that they were jointly represented by the same two attorneys. Defendants allege this failure resulted in the denial of their constitutional right to effective assistance of counsel.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13, of the Louisiana Constitution guarantee a defendant the right to effective counsel. Effectiveness is not a matter of professional competence alone; counsel must dedicate his full talents as a vigorous advocate to the single goal of acquittal by all means fair and honorable, unfettered by commitments to others.[1] While multiple representation is not per se illegal, it violates a defendant’s constitutional rights if it gives hrise to a conflict of interest.[2] The right to effective assistance of counsel is so vital to a fair trial that we are compelled to examine every potential infringement of that right with the most exacting scrutiny.[3]
In a case such as this one where defendants did not raise the issue of a conflict of interest until after trial, defendants bear the burden of proving that an actual conflict of interest adversely affected their lawyer’s performance. An actual conflict of interest is established when the defendant proves his attorney was placed in a situation inherently conducive to divided loyalties.[4] In State v. Kahey,[5] the Louisiana Supreme Court accepted the definition of an actual conflict as set forth by the United States Fifth Circuit in Zuck v. Alabama.[6]
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest[s] of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Where a conflict of interest is real, a denial of effective representation exists without a showing of specific prejudice. A reviewing court cannot, however, presume that joint representation and the possibility of a eon- *1229 flirt, has resulted in ineffective assistance of counsel.[7]
All three defendants were charged with second-degree murder. The prosecution’s theory was that Watts killed Mickey while committing aggravated burglary of the Simmonses’ residence, and that Smith and Myles were principals because they were participants in the aggravated burglary. To commit aggravated burglary, the perpetrator must 1) enter the premises without authorization, 2) intend to commit a felony or theft once inside, and 3) be armed with a dangerous weapon or arm himself after entering the premises.
Watts admitted shooting Mickey, but he had two main defenses: 1) that he shot in self-defense; and 2) that he was not committing aggravated burglary because he | shad permission to enter the premises. To a lesser extent, he also argued he did not intend to commit a theft but simply intended to retrieve money belonging to him.
Myles and Smith’s primary defense was that they did not know Watts was armed and thus they never intended to participate in an aggravated burglary. They both also contended they did not intend to commit a theft but were only going to take what was owed them. Myles also contended he had permission to enter the premises. Smith, on the other hand, denied he was authorized to enter the premises.
Did Gros and McClanahan owe a duty to one of their clients to take some action that could be detrimental to the other two? If so, there was an actual conflict that denied all three of them effective representation, and no showing of specific prejudice is necessary.[8]
In Kahey, the supreme court compiled a list of common situations where conflicts of interest exist. Included in that list are: 1) one defendant placing primary blame on the other, 2) the codefendants having conflicting defenses, 3) the testimony of one defendant inculpating the other, and 4) the codefend-ants being unequally involved in the crime.[9] These situations exist in this case.
Ml three defendants argued they were not committing theft but were simply taking what was theirs. In that respect, their defenses were compatible. But Smith’s testimony was adverse to Watts’s and Myles’s defenses of authorized entry. Furthermore, Myles and Smith contend their most effective defense would have been to lay all blame on Watts and portray themselves as victims of circumstance who were in the wrong place at the wrong time. As the Kahey court noted, divided loyalties tend to erode counsel’s zeal. .In this case, Gros and McClanahan were hamstrung from pursuing this defense for Myles and Smith as zealously as possible by their duty to also defend Watts.
In pursuing this line of defense on even a • limited basis, however, the attorneys breached their duty to Watts to pursue Watts’s defense as zealously as possible. During Myles’s direct examination, defense counsel asked Myles the following series of questions that implied Watts was guilty of a crime:
Q. What if any aidfing] and abetting did you do with [Watts] toward commission of this crime?
Is A. I don’t understand.
Q. Did you aid and abet, help him out in, assist in this crime?
A No.
Q. What if any hiding of [Watts] did you do?
A. I didn’t.
Q. What if any hiring him to kill Mickey?
A. No. ■
While examining Smith, defense counsel asked similar questions:
Q. At any time did you tell [Watts] to go shoot Mickey?
[[Image here]]
A. No.
Q. What, if anything, did you hide ... ?
A. No. *1230 Q. What if anything did you hire (sic) [Watts] to commit the crime?
At this point a bench conference was held that, unfortunately, was not transcribed.
Despite the best intentions of Gros and McClanahan, we find the representation of all three defendants in this case gave rise to divided loyalties, thus depriving the defendants of their constitutional right to conflict-free counsel. Counsels’ ardor in defending Smith and Myles by placing all blame on Watts was dampened by their duty to defend Watts. Conversely, their defense of Watts was impaired by their duty to defend Smith and Myles. Not one of the three defendants received the benefit of counsel dedicated single-mindedly to his acquittal. For this reason, we must reverse their convictions and sentences and remand this case for a new trial with separate counsel.
This disposition of this matter permits us to pretermit defendants’ remaining assignments of error.
CONVICTIONS AND SENTENCES REVERSED; REMANDED FOR NEW TRIAL.
LOTTINGER, C.J., dissents and assigns reasons.

. Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974); Porter v. United States, 298 F.2d 461, 463 (5th Cir.1962).

. State v. Kahey, 436 So.2d 475, 484 (La.1983).

. Zuck v. Alabama, 588 F.2d 436, 440 (5th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).

. Kahey, 436 So.2d at 484.

. Id. at 484-485.

. 588 F.2d at 439.

. Kahey, 436 So.2d at 484-485.

. Id. at 485; Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974).

.436 So.2d at 485.