Vernon SMITH, Billy Kimmel,
Petitioners-Appellants,

v.

Donald E. BORDENKIRCHER,
Respondent-Appellee.

No. 81–5398.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1982.

Decided March 5, 1982.

Rehearing Denied April 5, 1982.

William M. Radigan, Asst. Public Defender, Frankfort, Ky., for petitioners-appellants.

Steven L. Beshear, Atty. Gen. of Ky., James L. Dickinson, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

* The Honorable Potter Stewart, Associate Justice of the United States Supreme Court

Before STEWART, Associate Justice (Retired) *, LIVELY and MERRITT, Circuit Judges.

PER CURIAM.

The basic due process issue here is whether a lawyer representing two or more criminal defendants in a state trial must withdraw as counsel for remaining defendants because of potential conflict of interest when one co-defendant turns state's evidence. The Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) does not authorize adoption of such a *per se* rule governing claimed due process violations based on conflict of interest, and we conclude that the District Court finding of no conflict of interest is not clearly erroneous.

After reconsideration of the question in light of *Cuyler*, the District Court rejected petitioners' claims of ineffective assistance of counsel. Petitioners were represented at trial by Mr. Rhea, who had also represented a third co-defendant before she pled guilty and testified for the prosecution pursuant to a plea bargain arrangement.

Petitioners claim that because of Mr. Rhea's prior relationship with the prosecution's main witness he was unable effectively to cross examine her because of restraints imposed upon him by the attorney-client privilege. This Court upheld the District Court's first denial of the habeas corpus petition on the grounds that information protected by the attorney-client privilege could not have been used by either Mr. Rhea or any other attorney who happened to acquire such confidential information so that there was no actual conflict in representing the defendants. The Supreme Court granted certiorari, vacated the judgment and remanded with instructions to reconsider the case in light of *Cuyler*. This Court in turn remanded the case for a determination of whether there was any conflict of interest and, if so, whether such a conflict interfered with Mr. Rhea's ability

(Retired), sitting by designation.

to represent his client. The District Court adopted the conclusions of the Magistrate who determined after extensive hearings that there was no actual conflict of interest, and even if there were, it did not interfere with the counsel's ability to represent the defendants. The petitioners contend that the court erred, first in determining that there was no conflict, and second in appearing to require a finding of prejudice once conflict is shown.

In *Cuyler*, the Supreme Court noted that although a conflict of interest may be possible in every instance of multiple representation, a reviewing court cannot presume that the mere "possibility for such conflict has resulted in ineffective assistance of counsel." *Cuyler*, 100 S.Ct. at 1718. If a defendant does not raise the conflict issue at trial, then "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* 100 S.Ct. at 1719. This two part test does not permit the formulation of strict rules against a lawyer's continued representation of remaining co-defendants if an indicted former client pleads guilty and cooperates with the prosecution. Rather, the *Cuyler* test directs us to determine, on the facts of each case, whether there is an actual conflict of interest and whether that conflict has caused ineffective performance in violation of the provisions of the Sixth Amendment made applicable to state proceedings by the Due Process Clause of the Fourteenth Amendment.

The record in this case, which now includes the Magistrate's hearing on the conflict of interest issue as well as relevant portions of the trial transcript, indicates that immediately upon learning of the co-defendant's plea bargain and of her intention to cooperate with the prosecutor, Mr. Rhea withdrew from representing her. Mr. Rhea testified before the Magistrate that he did not think at the time of trial that the attorney-client privilege restricted his cross examination of the witness on prior inconsistent statements. Indeed, the transcript of his cross examination at trial indicates that Mr. Rhea did bring out the prior inconsistent statements which the witness admitted but explained by the assertion that she was coerced by the defendants to say nothing. (App. at A37). The trial transcript reveals that Rhea conducted a professionally acceptable cross examination. Although it is true as the petitioners allege that the cross could have been stronger, Mr. Rhea's explanation that this milder form of questioning was part of his trial strategy is supported by the record. Apart from Mr. Rhea's testimony that he did not want to alienate the jury by an aggressive cross examination of the witness, the appellee stressed at oral argument that cross examination concerning the witness' plea bargain and guilty plea to the same crime would have been highly incriminating and inconsistent with the defendants' alibi defenses. (App. at A143–144.)

Appellants have not adduced evidence that counsel "actively represented conflicting interests" and the District Court's finding that there was no actual conflict of interest in this case is not clearly erroneous. The *Cuyler* Court states that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 100 S.Ct. at 1719.

Accordingly, the judgment of the District Court is affirmed.