**Joyce Ann DIXSON, Plaintiff,**

v.

**Denise QUARLES and Frank J. Kelley, Defendants.**

**Civ. A. No. 84–CV–4957–DT.**

United States District Court, E.D. Michigan, S.D.

March 12, 1985.

Kenneth M. Mogill and Edward J. Little-john, Detroit, Mich., for plaintiff.

Edgar L. Church, Jr., Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## OPINION

RALPH B. GUY, Jr., District Judge.

Petitioner, presently confined at the Huron Valley Women's Facility at Ypsilanti, Michigan, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 2, 1976, after a bench trial, she was convicted of first-degree murder. Mich.Comp.Laws § 750.316. She was sentenced by Saginaw Circuit Court Judge Fred Borchard to a term of life imprisonment. On December 1, 1977, the Michigan Court of Appeals reversed her conviction (Docket No. 31120). The Michigan Supreme Court reversed the Michigan Court of Appeals' decision and, on July 17, 1978, remanded for further consideration. 403 Mich. 106, 267 N.W.2d 423 (1978). On October 5, 1978, the Michigan Court of Appeals once again reversed Petitioner's conviction (Docket No. 78–3439). Subsequently, on February 26, 1979, the Michigan Supreme Court vacated the Michigan Court of Appeals' decision. 406 Mich. 864, 275 N.W.2d 551 (1979).

On July 19, 1982, the trial court denied Petitioner's delayed motion for a new trial and, on November 1, 1983, the Michigan Court of Appeals affirmed (Docket No. 66028). The Michigan Supreme Court denied leave to appeal on April 30, 1984. 419 Mich. 866 (1984).

On December 22, 1975, Petitioner shot and killed a man named John L. Bond in his home. The only other witness to the shooting, Claudette Hence, testified that Petitioner had murdered Bond. Petitioner, on the other hand, testified that Bond was a pimp and a narcotics dealer, and was paranoid that someone was trying to kill him. Bond believed that he was to be indicted for tax evasion and would soon go to prison. Consequently, he was going to kill two people. Believing her own life to be in jeopardy, Petitioner contended that she killed him in self defense.

Petitioner claims, and Respondent does not controvert, that in 1982, she first learned that her trial attorney had, until Bond's death, been Bond's attorney. In an affidavit attached to Petitioner's petition, this attorney states:

Further, affiant states that prior to being retained to represent Ms. Dixson he had represented the deceased, Mr. Bond, many times on a number of matters over a period of years; that Mr. Bond had also referred other clients to him; that immediately prior to Mr. Bond's death and until the time of Mr. Bond's death, affiant had discussed with Mr. Bond an Internal Revenue Service criminal tax fraud investigation;

Further, affiant states that he is without personal knowledge as to whether Ms. Dixson knew of affiant's representation of Mr. Bond, and that at no time prior to or after being retained by Ms. Dixson can he recall advising her of his representation of the deceased, nor can he

recall advising the Court of this matter on the record. . . .

In its July 9, 1982 opinion, the trial court rejected Petitioner's claim that the conviction should be reversed due to a conflict of interest:

> The record in this case shows that Defendant was accorded full and effective representation at trial. The defense presented was self defense. [The defense attorney] throughout the trial sought to portray the victim, John L. Bond, as a pimp, a narcotics dealer, and "a person of the lowest moral turpitude". He sought to show that Bond was a dangerous and paranoid individual who was planning to kill the Defendant and two (2) other persons. There is no evidence in this record that [the defense attorney's] representation of the Defendant was hampered by conflicting loyalties. To the contrary, [his] representation of Defendant was vigorous and uncompromising. The interests of the Defendant were not sacrificed in any manner. Counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law.

In affirming, the Michigan Court of Appeals stated:

> [T]he trial court . . . concluded that Defendant had not shown an actual conflict of interest adversely affecting her counsel's performance. The Court noted that the defense strategy followed at trial had included a vigorous attack on the victim's character, an attempt to show that the victim had been involved in a plot to murder Defendant and several others, and a claim of self-defense. While Defendant speculated that counsel may have known of the relevant evidence protected by the attorney-client privilege or may have had personal knowledge of relevant facts, there was not a shred of evidence to support such speculations.

Petitioner claims that the Michigan courts applied an incorrect standard in analyzing her conflict of interest claim:

> [W]here as here, the conflict was *unknown* to the defendant and *not re-*

*vealed* to the Court, a *per se* rule applies, vitiating a resulting conviction as a matter of law.

> \*    \*    \*    \*    \*    \*

> The rule that emerges . . . a clear rule and the only one consistent with importance of the constitutional right to conflict-free representation is that whenever defense counsel is tied, through a present or former attorney-client relationship, to an interest for the prosecution in a criminal case, an actual conflict of interest exists. This follows whether the link to the prosecution is present representation of the alleged victim in an unrelated matter, former representation of the prosecutor in an unrelated matter, concurrent representation of a main prosecution witness or former representation of a prosecution witness. Where a link exists, a conflict does, too; and where a conflict exists a resulting conviction is fundamentally tainted as *a matter of law*.

In the present case, the question before this court does not concern the trial attorney's ethical obligations to the Bar, the court, or to his client. Instead, the issue is whether or not, under the facts of this case, a new trial should be ordered. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), summarizes the applicable legal standard:

> In *Cuyler v. Sullivan*, 446 U.S. [335], at 345–350, 100 S.Ct. [1708] at 1716–1719 [64 L.Ed.2d 333] [1980], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see e.g.* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of

presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above [actual or constructive denial of the assistance of counsel altogether]. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance". *Cuyler v. Sullivan, supra*, 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted).

In other words, "the *Cuyler* test directs us to determine, on the facts of each case, whether there is an actual conflict of interest and whether that conflict has caused ineffective performance in violation of the provisions of the Sixth Amendment...." *Smith v. Bordenkircher*, 671 F.2d 986, 987 (6th Cir.1982), *cert. denied*, 459 U.S. 848, 103 S.Ct. 107, 74 L.Ed.2d 96 (1982).

To support her position, Petitioner cites *Castillo v. Estelle*, 504 F.2d 1243 (5th Cir. 1974), and *Zuck v. Alabama*, 588 F.2d 436 (5th Cir.1979), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). In *Castillo*, the Fifth Circuit found an actual conflict of interest and reversed the conviction where, unknown to the Petitioner, his trial attorney was representing the victim of the offense in an unrelated civil case. It reversed because this situation was found so inherently conducive to divided loyalties: "[The attorney's] zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness." 504 F.2d at 1245.

■ In *Zuck*, the defense attorney, unknown to his client, was representing the prosecution in an unrelated civil matter. Finding that the prosecution might take umbrage at a vigorous defense, the Fifth Circuit found the situation so inherently conducive to divided loyalties that it found that an actual conflict existed and, therefore, ordered a new trial. It did, however, also note: "A conflict of interest must be actual rather than speculative because the constitutional guarantees of effective assistance of counsel are implicated...." 588 F.2d at 439. This is the same rule in the Sixth Circuit. The mere possibility of conflict is insufficient. *Thacker v. Bordenkircher*, 590 F.2d 640 (6th Cir.1979), *cert. denied*, 442 U.S. 912, 99 S.Ct. 2827, 61 L.Ed.2d 278 (1979); *United States v. LaRiche*, 549 F.2d 1088, 1095 (6th Cir.1977), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977).

The test for determining whether a conflict of interest is actual or merely possible is found in *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.1983), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983):

We will not find an actual conflict unless appellants can point to "specific instances in the record to suggest an actual conflict or impairment of their interests." *United States v. Fox*, 613 F.2d [99, 102 (5th Cir.1980)]. Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Comment, 68 J.Crim.L. & Criminology, *supra*, at 232 (parentheses in original). There is no violation where the conflict is "irrelevant or merely hypothetical"; there must be an "actual significant conflict". *Foxworth* [*v. Wainwright*, 516 F.2d 1072, 1077 n. 7 (5th Cir.1975)].

■ Petitioner claims that an actual conflict existed in the present situation. Even though Bond was dead, the attorney-client privilege still existed. *Eicholtz v. Grunewald*, 313 Mich. 666, 671, 21 N.W.2d 914 (1946) She argues that:

This continuing obligation created an actual conflict of interest here, a conflict that was magnified by the scope, duration and recency of [defense counsel's] representation of Bond and by the nature of the defense to be presented. In preparing and presenting the defense in this case [defense counsel] had to elicit facts

and circumstances inextricably interwoven with the facts and circumstances of Bond's history and personality. He also had to explore Bond's feelings and emotional state about the tax fraud investigation on which Bond had been consulting with him immediately prior to his death—facts which were likely to bear heavily on Bond's temper and facts known to [defense counsel] only through his representation of him. It would be facile and disingenuous to suggest that under these circumstances a concern for his continuing obligation to preserve confidentiality in no way influenced [his] conduct.

Petitioner's position, however, is not supported by the cases. In *Smith, supra*, the defense counsel, before trial, represented the two co-defendants. He ceased to represent both of them when one client pled guilty pursuant to a plea bargain. He continued to represent the petitioner, however, even though the co-defendant testified at the trial for the prosecution. The petitioner argued to the Sixth Circuit that such a conflict restricted cross-examination of this witness. The Sixth Circuit rejected this claim by stating that the petitioner had not shown how it was restricted and that the record showed that the attorney in fact brought out prior inconsistent statements: "The trial transcript reveals that [the attorney] conducted a professionally acceptable cross examination. Although it is true as the petitioners allege that the cross could have been stronger," the record supported the attorney's assertion that that was really a part of the trial strategy. 671 F.2d at 987. As such, no actual conflict was found.

In *United States v. Gullett*, 713 F.2d 1203 (6th Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984), the Sixth Circuit once again found no actual conflict. There, the trial attorney jointly represented both defendants. One of them argued that the attorney had failed to distinguish between the co-defendant's dominant and his own minimal role. The Sixth Circuit rejected this argument, however, by stating that the record showed that the attorney had diligently represented his client's interests at trial. *Id.* at 1214.

A third case controlling the present case is *Barham v. United States*, 724 F.2d 1529 (11th Cir.1984), which distinguished both *Castillo* and *Zuck*. There, the Eleventh Circuit refused to grant relief even though the trial attorney had represented a prosecution witness in a civil matter. Because the witness' testimony was too insignificant at trial, it ruled that the petitioner had not shown an actual conflict. His trial counsel's advocacy had not been dulled due to the simultaneous representation. *Id.* at 1531.

■ Petitioner argues that her trial counsel's relationship with the deceased prevented him from calling witnesses to verify his poor reputation and that he failed to thoroughly investigate the matter. Bond's reputation was very crucial to the defense. Petitioner has, however, made no offer of proof for these allegations. Furthermore, the record controverts Petitioner's statement that she was the only one to testify about Petitioner's reputation. Defense counsel began this line of inquiry with the second witness and established it through a number of the prosecution witnesses. Petitioner has not suggested which other witnesses could have been called. Furthermore, Petitioner has not shown how defense counsel's solicitation for Bond prevented him from doing that. As it was, defense counsel stated in opening argument:

> Our position is that the defendant in this matter did shoot John Bond, but she did in self-defense and fear for her life. Our proof further will show that John L. Bond is a panderer, a narcotics purveyor, a person of the lowest moral turpitude. It will further show that he was a paranoid, feeling that everyone was going to kill him and get him.

Petitioner has not shown what else defense counsel would have done but for his earlier representation of Bond.

■ Petitioner also argues that defense counsel was deficient in letting the trial judge read the preliminary examination

transcript in ruling on a motion even though the jury had already been waived. This reason formed the basis for the Michigan Court of Appeals' first reversal. The Michigan Supreme Court, however, relied on defense counsel's acquiescence in reinstating the conviction. But whether this course of action constitutes ineffective assistance of counsel, however, is irrelevant to Petitioner's conflict claim. Petitioner has not shown that her trial counsel did this because of his former representation of Bond. In short, Petitioner has failed to "establish a concrete conflict, as envisioned in *Cuyler*, which adversely affected [her] lawyer's performance." *O'Guin v. Foltz*, 715 F.2d 397, 400 (6th Cir.1983).

For the foregoing reasons, the petition for writ of habeas corpus must be DENIED. An appropriate order and judgment shall issue.