Louis **REEDUS**, Petitioner,

v.

Jimmy **STEGALL**, Respondent.

No. CIV.A.00–CV–73585–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 28, 2001.

Louis Reedus, Macomb Correctional Facility, New Haven, MI, Pro se.

Brenda E. Turner, Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Jimmy Stegall, respondent.

### OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

Petitioner Louis Reedus, a state prisoner currently in custody at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. Petitioner was convicted of second-degree murder and felony firearm following a jury trial in the Recorder's Court for the City of Detroit in 1990. He was also convicted of being a third habitual offender following a bench trial. The trial court sentenced him to consecutive terms of 35 to 70 years imprisonment and two years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the admission of hearsay evidence, prosecutorial misconduct, the effectiveness of trial and appellate counsel, the failure to produce a witness, and the jury instructions. For the reasons set forth below, the petition for a writ of habeas corpus is denied.

### I. Background Facts

Petitioner's convictions arise from the shooting death of Steven Wilkes in Detroit, Michigan on July 14, 1989. The Michigan Court of Appeals described the shooting incident as follows:

> This case involves the fatal shooting of Steven Wilkes by defendant, also known

**1.** Staff Attorney Cheryl Takacs Bell provided quality research assistance.

as "Boogie." Defendant apparently sold crack cocaine out of house on Euclid Street in Detroit. On July 14, 1989, defendant was involved in a transaction with a woman in an automobile in front of the house. Believing that the woman shortchanged him, defendant yelled at her to wait, but she began to speed off. Defendant fired two shots. One of the shots struck Wilkes, who was walking on the other side of Euclid Street. Defendant testified that he fired the shots at the grass to let the car's occupants know he had a gun.

*People v. Reedus,* No. 127778 (Mich. Ct. App. June 19, 1992) (unpublished).

At trial, Douglas Jackson, Steven Wilkes' friend, testified that he and Wilkes were walking past 690 Euclid Street when they heard a car speeding away and a male voice yell, "hey motherfucker, hold it," followed by three or four gunshots. Wilkes then said that he was hit. Jackson initially told police that he did not know where the shots came from, but testified at trial that the gunshots came from behind him.

Ricky Taylor, Petitioner's brother, testified that he lived at 690 Euclid with Petitioner and several others at the time of the shooting. Petitioner worked for him selling cocaine. Taylor initially denied that Petitioner was selling cocaine for him at the time of the shooting, but was impeached with his preliminary examination testimony to the contrary. Taylor testified that Petitioner and a woman were involved in a cocaine transaction and that he saw Petitioner counting money. Taylor then heard a car speeding away followed by gunshots, but did not see the shooting. When he asked Petitioner what happened, Petitioner said that the woman tried to "run off with the stuff." Taylor initially testified that he did not know whether

Petitioner had a gun, but following impeachment, admitted that Petitioner had a gun but he was unsure of the type. Taylor testified that Petitioner told him that he got rid of the gun following the shooting, but Taylor did not know any details about this matter.

Taylor also testified that after the shooting, he saw Douglas Jackson running down the street yelling for someone to get an ambulance. Taylor went into his house and called for an ambulance. Over defense objection, Taylor testified that a neighbor named Emanuel came down the street after the shooting and said, "as big as that car was, Boogie missed both times." [2] Taylor also stated that the woman who shortchanged Petitioner later returned to the house and gave him twenty dollars to give to Petitioner.

Police officer Julie Broomfield testified that Petitioner, Taylor and an unnamed woman were brought in for questioning about the shooting on July 16, 1989. Petitioner initially denied any knowledge of the shooting, but later admitted that he fired the gun because he saw a gun in the woman's car.

Petitioner testified on his own behalf at trial. He stated that he saw a gun in the car as it was leaving and that he fired his gun to let the occupants of the car know that he had a weapon. He said that he pointed the gun toward the ground and that he never intended to hit anyone.

During closing arguments, the prosecutor urged the jury to convict Petitioner of second-degree murder and noted that the defense wanted the jury to "walk him out the door" on his claim of self-defense. The prosecutor called the lesser included offenses "outrageous" and said that the evi-

---

**2.** The trial court allowed the statement to be admitted under the present sense impression exception to the hearsay rule.

dence would even support a first-degree murder charge. During rebuttal, the prosecutor referenced Petitioner's drug dealing in response to defense counsel's arguments. Although the prosecutor stated that Petitioner was a bad person for selling drugs which are "poisoning our city," he explained that Petitioner's drug-related activities were important for establishing his intent and motive at the time of the shooting. The prosecutor criticized the defense tactic of creating a smoke screen and compared defense counsel to an octopus who excretes ink into the water to escape its enemies.

At the close of trial, the jury convicted Petitioner of second-degree murder and felony firearm. Following a bench trial, the trial court also convicted him of being a third habitual offender. The trial court sentenced Petitioner to consecutive terms of 35–70 years imprisonment and two years imprisonment on his convictions.

## II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising the following claims through counsel and *in pro per:*

 I. · He was denied a fair trial by the prosecutor's improper arguments during closing and rebuttal.

 II. He was denied his right to a fair trial by the admission of hearsay evidence.

 III. His sentence violated state law.

 IV. He should be re-sentenced because the trial court failed to articulate reasons for his habitual offender sentence.

 V. He should be re-sentenced because the trial court lacked jurisdiction to

change his sentence from life imprisonment to 35–70 years imprisonment.

 VI. There was insufficient evidence to convict him of second-degree murder.

The Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Reedus,* No. 127778 (Mich. Ct.App. June 19, 1992) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Reedus,* No. 94513, 1992 WL 420695 (Mich. Dec.30, 1992).

On April 23, 1997, Petitioner filed a motion for relief from judgment with the trial court, raising claims of ineffective assistance of counsel. The trial court denied the motion, finding the claims to be without merit and finding that Petitioner "has not shown good cause as to why this issue was not raised previously. MCR 6.508(D)(3)." *People v. Reedus,* No. 89–8666 (Recorder's Ct. May 9, 1997) (unpublished). The trial court also denied Petitioner's motion for reconsideration on July 21, 1997 based upon his procedural default. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508." *People v. Reedus,* No. 211635 (Mich.Ct.App. Sept. 9, 1999).[3] Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Reedus,* No. 116725, 2000 WL 1421894 (Mich. Sept. 26, 2000).

Petitioner filed the present petition for a writ of habeas corpus on August 9, 2000,[4] as well as a supplement on November 27, 2000, asserting the following claims as grounds for relief:

---

**3.** The Michigan Court of Appeals reissued the same order at Petitioner's request on March 24, 2000.

**4.** The Court granted Petitioner's motion for a stay of proceedings and held his initial petition in abeyance pending the resolution of his state court motion for relief from judgment.

I. He was denied a fair trial due to the admission of hearsay evidence.

II. He was denied a fair trial due to the prosecutor's improper arguments.

III. He was denied the effective assistance of trial counsel because counsel failed to investigate an eyewitness and the circumstances of his arrest.

IV. He was denied the effective assistance of appellate counsel because counsel failed to raise the issues of the prosecutor's failure to exercise due diligence in locating a witness or the trial court's failure to inquire into the witness' availability.

V. He was denied the effective assistance of trial counsel because counsel had a conflict of interest arising from the representation of a key prosecution witness.

VI. He was denied his right of confrontation and due process because the prosecutor failed to produce a witness whose hearsay statement was admitted into evidence at trial and no showing was made as to the witness' unavailability or the prosecution's due diligence to secure the witness.

VII. He was denied a fair trial when the trial court refused to instruct the jury on the careless, reckless, and negligent use of firearm resulting in death.

Respondent filed an answer to the petition on June 19, 2001, asserting that Petitioner's claims should be denied for lack of merit and/or based upon procedural default.

### III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA. According to the Supreme Court:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

■ The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers only to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

■ Lastly, this Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Hearsay Evidence Claim*

Petitioner first contends that he was denied a fair trial by the admission of Ricky Taylor's hearsay testimony that a neighbor named Emanuel said, "as big as that car is, Boogie missed both times" shortly after the shooting. The trial court allowed the statement to be admitted into evidence under the present sense impression exception to the hearsay rule.

■ It is well-settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Serra v. Michigan Dept. of Corrections,* 4 F.3d 1348, 1354 (6th Cir.1993). Questions concerning the admissibility of evidence are properly left to the sound discretion of the trial court. *Oliphant v. Koehler,* 594 F.2d 547, 555 (6th Cir.1979). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders,* 34 F.3d 352, 356 (6th Cir.1994).

■ In this case, the Michigan Court of Appeals found that even if the trial court erred in admitting the statement, the error was harmless. The Court explained: "Defendant admitted shooting the gun, and his intent to shoot toward the car—rather than down at the grass—may be inferred from evidence that the shots traveled across the street. Given the cumulative nature of the hearsay evidence, we conclude that the error, if any, was harmless." *Reedus,* No. 127778, slip op. at 1. The Michigan Court of Appeals did not specifically address whether the error constituted a denial of Petitioner's federal rights. Accordingly, this Court must conduct an independent review of the state court's decision. *See, e.g., Harris v. Stovall,* 212

F.3d 940, 943 (6th Cir.2000); *Morse v. Trippett*, 102 F.Supp.2d 392, 402 (E.D.Mich.2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris*, 212 F.3d at 943. This independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

██ Petitioner asserts that admission of the hearsay testimony violated his right of confrontation. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847–48, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The Confrontation Clause does not prevent hearsay from being admitted into evidence at trial when the statement: (1) falls within a firmly-rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Lilly v. Virginia*, 527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *see also Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.2000).

██ In this case, the challenged statement was admitted under the present sense impression exception to the hearsay rule, which provides for the admission of a statement describing or explaining an event made while the declarant was perceiving the event or immediately thereafter, even if the declarant is available as a witness. *See* Mich. R. Evid. 803(1); Fed. R.Evid. 803(1). The trial court did not err in admitting this statement. The present sense impression exception to the hearsay rule is firmly-rooted. *See, e.g., United States v. King*, 133 F.3d 918, 1997 WL 791686, *1 (4th Cir.1997); *United States v. Vega*, 883 F.2d 1025, 1989 WL 95475, *4 (9th Cir.1989); *United States v. Peacock*, 654 F.2d 339, 350 (5th Cir.1981); *Brown v. Tard*, 552 F.Supp. 1341, 1351 (D.N.J.1982). The record indicates that the declarant Emanuel made the statement "as big as that car was, Boogie missed both times" to Ricky Taylor within a short time after the shooting.

██ Moreover, even if admission of the hearsay statement violated Petitioner's constitutional rights, he is still not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999) (holding that the harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict). Harmless error analysis applies to jury instruction errors, *see Neder v. United States*, 527 U.S. 1, 9–10, 119 S.Ct.

1827, 144 L.Ed.2d 35 (1999), as well as Confrontation Clause errors, *see Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

Having considered the matter, this Court concludes that admission of the hearsay statement did not have a substantial or injurious effect or influence in determining the jury's verdict. As noted by the Michigan Court of Appeals, Petitioner admitted firing the gun and his intent to shoot at the car can be inferred from the fact that the bullet traveled across the street and struck the victim. Additionally, there was other evidence at trial to establish Petitioner's guilt of second-degree murder—without reliance upon the disputed testimony. For example, Ricky Taylor testified that Petitioner had a gun and was engaged in a drug transaction when he (Taylor) heard gunshots. When Taylor asked Petitioner what happened, Petitioner replied, "She tried to get away with the stuff" and told him that he got rid of his gun. This testimony indicates that Petitioner intended to shoot at the car and did not act in self-defense. Given such evidence, the Court concludes that any error in the admission of the hearsay statement was harmless under the standard set forth in *Brecht, supra.* Petitioner is not entitled to relief on this claim.

## B. *Prosecutorial Misconduct Claim*

Petitioner next contends that he was denied a fair trial by the prosecutor's improper closing and rebuttal arguments at trial. Specifically, Petitioner alleges that the prosecutor denigrated the defense, created sympathy for the victim, argued that the evidence supported the higher charge of first-degree murder, and characterized him as a drug dealer and bad person. Respondent contends that this claim is barred by procedural default. This Court agrees.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991). In *Wainwright,* the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing Petitioner's claim, the Court of Appeals relied upon a state procedural bar, stating that Petitioner had not objected to the prosecutor's comments at trial and had not shown that failure to consider the issue would result in manifest injustice. *Reedus,* No. 127778, slip op. at 1.

The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir.1989). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir.1991). In this case, the Michigan Court of Appeals dismissed Petitioner's prosecutorial misconduct claim based upon procedural default—his failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir.1996). Petitioner neither alleges nor establishes cause to excuse his procedural default. This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir.1983).

Moreover, Petitioner cannot establish prejudice in this case. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Factors to be considered in weighing the extent of a prosecutor's misconduct are:

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355–56 (6th Cir.1993)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Id.* (citations omitted). The prosecutor's comments concerning the victim, the circumstances of the crime, and Petitioner's drug dealing were relevant and based upon the evidence presented at trial. The prosecutor's reference to first-degree murder was isolated and did not tend to mislead the jury. The prosecutor's remarks concerning Petitioner's defense were made in rebuttal to defense counsel's arguments. To the extent that those remarks were critical of defense counsel, they were not so offensive or pervasive as to deny Petitioner a fair trial.

Further, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808

(1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. This prosecutorial misconduct claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

## C. *Procedural Default of Remaining Claims*

Respondent asserts that Petitioner's remaining claims are barred by procedural default. As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85–87, 97 S.Ct. 2497; *Couch*, 951 F.2d at 96. A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85, 97 S.Ct. 2497; *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir.2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. *See Harris*, 489 U.S. at 263–64, 109 S.Ct. 1038. The last *explained* state court judgment should be used to make this determination. *Ylst*, 501 U.S. at 803–05, 111 S.Ct. 2590. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

In this case, the Michigan appellate courts relied upon Michigan Court Rule 6.508(D) in denying Petitioner's application for leave to appeal the denial of his motion for relief from judgment concerning these claims. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The trial court specifically denied the motion for relief from judgment because Petitioner failed to raise his claims on direct appeal, despite the opportunity to do so.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir. 1996).

Petitioner arguably asserts that appellate counsel was ineffective for failing to raise his habeas issues on direct appeal, which could constitute cause to excuse his procedural default. Even assuming that Petitioner can establish cause to excuse his default, however, he cannot demonstrate actual prejudice. As set forth below, Petitioner's defaulted claims lack merit and do not warrant habeas relief. Moreover, Petitioner has not established that a fundamental miscarriage of justice has occurred by showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup*, 513 U.S. at 326–27, 115 S.Ct. 851; *see also Bousley*, 523 U.S. at 624, 118 S.Ct. 1604.

As noted, a claim of actual innocence requires a petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. Petitioner's remaining habeas claims are thus barred by procedural default, are otherwise without merit (as discussed *infra*), and do not warrant relief.

### D. *Merits of Defaulted Claims*

#### 1. *Ineffective Assistance of Trial Counsel Claims*

Petitioner claims that trial counsel was ineffective for failing to investigate an eyewitness and failing to investigate the circumstances of his arrest. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the United States Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

#### a. *Failure to Investigate Witness*

 Petitioner claims that trial counsel was ineffective for failing to investigate the hearsay declarant Emanuel to discover what he knew about the shooting. Even if counsel was deficient for failing to investigate this witness, however, Petitioner has not established that he was prejudiced by counsel's conduct. Emanuel's statement about the shooting, as related by Ricky Taylor, was that Petitioner missed the woman's car twice. Petitioner

admitted firing the gun, but claimed that he did it in self-defense and lacked the intent to harm anyone. Petitioner has not presented any evidence that Emanuel would have given which would have aided his defense. Conclusory allegations of ineffective assistance, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell,* 160 F.3d 276, 287 (6th Cir.1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir.1991) (conclusory allegations do not provide basis for evidentiary hearing in habeas proceedings). Petitioner has not established that the result of the proceeding would have been different if counsel had further investigated Emanuel nor has he shown that trial counsel's conduct has undermined the reliability of the trial proceedings. Petitioner is not entitled to relief on this claim.

### b. *Failure to Investigate Illegal Arrest*

 Petitioner also claims that trial counsel failed to investigate the circumstances of his police detention and arrest. This claim is also without merit. Petitioner has not shown that counsel was deficient or that he was prejudiced by counsel's conduct in this regard. Petitioner has presented no evidence establishing that he was illegally detained by police or that his statement was involuntary. The record reveals that Petitioner was initially taken to the police department for questioning about the shooting. Although he denied knowledge of the shooting, he was detained by police when they discovered that he had an outstanding bench warrant. After additional investigation, police considered Petitioner to be a suspect in the shooting. Police questioned Petitioner again while he was detained and he admitted his participation in the shooting. Given these circumstances, Petitioner cannot establish that counsel was ineffective for

failing to investigate or contest the legality of his arrest. Petitioner was held on the basis of a valid outstanding warrant and has no basis for asserting that his arrest was unconstitutional. *See United States v. VanMetre,* 150 F.3d 339, 347 (4th Cir. 1998). Trial counsel may have reasonably determined that a motion based upon a claim of illegal arrest would have been meritless. *See, e.g., United States v. Hon Yee–Chau and Tse Chi–Chat,* 17 F.3d 21 (2nd Cir.1994) (counsel's failure to move for suppression of post-arrest statement was understandable where the statement appeared to have been properly obtained). Petitioner has not shown that counsel was ineffective. He is thus not entitled to relief on this claim.

### 2. *Conflict of Interest Claim*

 Petitioner also asserts that he was denied a fair trial because trial counsel had a conflict of interest arising from his representation of a key prosecution witness in other matters. Defense attorneys owe their clients a duty of loyalty, which includes the duty to avoid conflicts of interest. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). A claim of conflict of interest alone, however, is insufficient to justify reversal of a conviction. *See United States v. Hall,* 200 F.3d 962, 966 (6th Cir.2000) (citing *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.1987)). Petitioner must demonstrate "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 (citing *Cuyler,* 446 U.S. at 350, 348, 100 S.Ct. 1708). Petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to

elicit) evidence helpful to one client but harmful to the other.'" *Thomas,* 818 F.2d at 481.

In this case, Petitioner alleges that trial counsel had a conflict of interest because he was representing prosecution witness Ricky Taylor in an unrelated criminal case. The fact that counsel may have represented Taylor on an unrelated matter, however, does not establish a conflict of interest. Courts will not find an actual conflict of interest unless a defendant can point to specific instances in the record to suggest an actual conflict or impairment of his interests. *See Dixson v. Quarles,* 627 F.Supp. 50, 53 (E.D.Mich.1985).

 Petitioner asserts that counsel failed to zealously cross-examine Taylor about the shooting, failed to impeach him with prior bad acts evidence, and failed to question him about pending criminal charges and possible cooperation with the prosecution. The record, however, reveals that the prosecution extensively questioned and impeached Taylor's testimony. Given that Taylor is Petitioner's brother, that Taylor did not actually witness the shooting, and that Petitioner's defense was self-defense and lack of intent, trial counsel may have reasonably believed that further questioning of Taylor was unnecessary. Lastly, Petitioner has presented no evidence of any cooperation between Taylor and the prosecution nor has he shown how, if there had been such cooperation, it prejudiced his case. Conclusory allegations of a conflict of interest which adversely affected a petitioner's legal representation do not warrant federal habeas relief. *See Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990). Petitioner has not shown that trial counsel had an actual conflict of interest which prejudiced his defense. He is thus not entitled to relief on this claim.

### 3. *Confrontation Clause Claim*

 Petitioner asserts that he was denied his right of confrontation when the prosecution failed to produce the hearsay declarant at trial or establish due diligence in attempting to secure the witness. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The prosecution in a criminal trial must make a good faith effort to produce relevant witnesses. *See, e.g., Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

The record in this case does not indicate why the prosecution did not call the hearsay declarant Emanuel to testify as a witness at trial. However, as noted, *supra,* the admission of the hearsay evidence was proper under Michigan law and did not violate the Confrontation Clause.

 Moreover, even if the failure to produce Emanuel violated Petitioner's constitutional rights, Petitioner is still not entitled to relief under the standard set forth in *Brecht, supra,* 507 U.S. at 637, 113 S.Ct. 1710; *see also O'Neal,* 513 U.S. at 445, 115 S.Ct. 992. Given the testimony presented at trial, including Petitioner's own testimony, there was sufficient evidence for the jury to find Petitioner guilty of second-degree murder and felony firearm. Petitioner is thus not entitled to relief on this claim.

#### 4. *Jury Instruction Claim*

 Petitioner asserts that he was denied a fair trial because the trial court refused to instruct the jury on the lesser offense of careless, reckless, and negligent use of a firearm resulting in death. Under Michigan law, a defendant may request and receive instructions on necessarily included lesser offenses without regard to the evidence, and on cognate lesser included offenses if the evidence would support a conviction on the lesser included offense. *See People v. Beach,* 429 Mich. 450, 462, 418 N.W.2d 861, 866 (1988). Careless, reckless, or negligent use of a firearm causing death is a cognate lesser offense of second-degree murder. *See People v. Rochowiak,* 416 Mich. 235, 242, 330 N.W.2d 669 (1982) (citing *People v. Jones,* 395 Mich. 379, 389–90, 236 N.W.2d 461 (1975)). The trial court is required to give an instruction for a cognate lesser included offense if: (1) the principal offense and the lesser offense are of the same class or category, and (2) the evidence adduced at trial would support a conviction of the lesser offense. *See People v. Hendricks,* 446 Mich. 435, 444, 521 N.W.2d 546 (1994). There must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense. *People v. Pouncey,* 437 Mich. 382, 387, 471 N.W.2d 346 (1991). Thus, as a matter of state law, the trial court was not required to give the requested instruction unless there was sufficient evidence to support such a conviction. In this case, the evidence revealed that Petitioner intentionally discharged the firearm, thereby negating an instruction on the careless, reckless, or negligent use of a firearm. *See, e.g., People v. Williams,* 143 Mich.App. 574, 591, 374 N.W.2d 158 (1985).

 Moreover, even assuming that the trial court erred as a matter of state law, Petitioner is not entitled to relief from this Court. A question concerning a perceived error of state law rarely serves as a basis for federal habeas corpus relief; and does so only when the petitioner is denied fundamental unfairness. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). In *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.1990), the United States Court of Appeals for the Sixth Circuit ruled that a state court's failure to instruct the jury on a lesser included offense in a noncapital criminal case is not such a "fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Moreover, given the evidence at trial, including Petitioner's own testimony, there was sufficient evidence for the jury to find Petitioner guilty of second-degree murder. Petitioner is not entitled to relief on this claim.

#### 5. *Ineffective Assistance of Appellate Counsel Claim*

 Lastly, Petitioner asserts that appellate counsel was ineffective for not raising the issues of the prosecutor's failure to exercise due diligence in locating a witness and the trial court's failure to inquire into the witness' availability on direct appeal. Given that those claims are without merit, Petitioner cannot establish that appellate counsel was ineffective under the standard set forth in *Strickland, supra.* Petitioner is thus not entitled to relief on this claim.

### V. *Conclusion*

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims presented. Accordingly, the Court **DENIES WITH**

**PREJUDICE** the petition for a writ of habeas corpus.